IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAKAI SCOTT,<br><br>               Petitioner,<br><br>vs.<br><br>MICHAEL CAPRA, Superintendent, Sing Sing Correctional Facility,<br><br>               Respondent. | No. 9:17-cv-01130-JKS<br><br>MEMORANDUM DECISION |

Sakai Scott, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Scott is in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Sing Sing Correctional Facility. Respondent has answered the Petition, and Scott has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On September 20, 2010, Scott, along with 20 others, was charged in a 195-count indictment as a result of a wiretap and surveillance investigation the Organized Crime Task Force ("OCTF") conducted from April 8 through September 15, 2010, of the "Bloods Drug Distribution Operation," which allegedly trafficked narcotics throughout New York State. In particular, Scott was charged with enterprise corruption, three counts of third-degree criminal sale of a controlled substance, and second-degree conspiracy. Following a jury trial, separate from those of his co-defendants, the jury found Scott guilty of the three drug sales and not guilty of the remaining two counts. The court sentenced Scott to three consecutive prison terms of six years each, with two years of post-release supervision.

Through counsel, Scott appealed his conviction, arguing that: 1) the evidence was legally insufficient and the verdict was against the weight of the evidence; 2) the trial court erred in admitting, without limiting instructions, a witness's testimony that Scott operated a drug sale business from a certain address; 3) Scott was prejudiced by the inclusion of his name on call transcript headings; 4) Scott was deprived of a fair trial when the trial court did not provide limiting instructions to accompany evidence regarding the Bloods gang; 5) trial counsel was ineffective for a) not objecting to the "drug business" testimony, b) not objecting to the inclusion of Scott's name on a call transcript, c) not objecting to the court's failure to provide limiting instructions about the Bloods gang evidence, and d) making various errors with respect to the June 10 drug sale; and 6) Scott's sentence was harsh and excessive. The Appellate Division of the New York Supreme Court unanimously affirmed the judgment against Scott in a reasoned opinion issued on June 18, 2015. *People v. Scott*, 12 N.Y.S.3d 335, 387 (N.Y. App. Div. 2015). Scott sought leave to appeal to the New York Court of Appeals, which was summarily denied on December 7, 2015. *People v. Scott*, 44 N.E.3d 947, 947 (N.Y. 2015).

Again proceeding through counsel, Scott then moved to vacate the judgment pursuant to New York Criminal Procedure ("CPL") § 440.10. In that motion, Scott averred that the prosecutor violated *Brady v. Maryland*, 373 U.S. 8 (1963),[1] by failing to disclose OCTF Investigator Denis Guiry's testimony at the trial of two co-defendants that was inconsistent with testimony given at Scott's trial. Scott also argued in the § 440.10 motion that counsel was ineffective for not using Guiry's prior testimony to cross-examine Guiry at his trial and for not arguing that there was a gap

---

[1] The term "*Brady*" is a shorthand reference to the rules of mandatory discovery in criminal cases under federal law. *Brady*, 373 U.S. at 8.

in the chain of custody for the heroin recovered in the confidential informant's ("CI") June 10 controlled drug purchase. Finally, he contended that the integrity of the heroin evidence was impaired because an outer bag used to transport the evidence bag had a hole in it. On May 22, 2017, the court denied the motion, concluding that the claims could have, but were not, raised on direct appeal.[2]

Scott moved the Appellate Division for leave to appeal the denial of his CPL § 440.10 motion and also requested coram nobis relief on the ground that his appellate counsel was ineffective for not arguing the *Brady* claims set forth in the § 440.10 motion. The Appellate Division denied the motions without comment, and the New York Court of Appeals summarily denied Scott's motion for leave to appeal the denial of his coram nobis motion.

Scott then timely filed the instant *pro se* Petition for a Writ of Habeas Corpus to this Court on September 26, 2017. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Scott argues that: 1) the verdict was against the weight of the evidence and unsupported by legally sufficient evidence; 2) the trial court erred in admitting without limiting instructions testimony that Scott ran a drug sale business from a certain address; 3) he was prejudiced by inclusion of his name on call transcripts; 4) the court deprived Scott of a fair trial by not providing a limiting instruction as to how jurors should consider evidence regarding the Bloods gang; 5) trial counsel was ineffective for a variety of

---

[2] *See* N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,] [a ]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . .").

3

reasons; 6) Scott's sentence was harsh and excessive; 7) the prosecutor violated *Brady*; 8) if the prosecutor did not violate *Brady*, counsel was ineffective for failing to find the discovery and use it on cross-examination; 9) counsel was ineffective for not objecting to the chain of custody for the heroin recovered in the June 10 sale and for not questioning the integrity of that evidence; and 10) appellate counsel was ineffective for failing to raise the *Brady* issues on appeal.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application

of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

A.     **Insufficiency of the Evidence/Verdict Against Weight of Evidence (Ground 1)**

Scott first argues, as he did on direct appeal, that the verdict was against the weight of the evidence and unsupported by legally sufficient evidence. As an initial matter, Respondent correctly argues that this claim is procedurally barred from federal habeas review. "[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim." *Harris*, 489 U.S. at 262. In finding the challenges to the evidence unpreserved for appellate review, the Appellate Division relied upon New York's contemporaneous objection rule, New York Criminal Procedure Law ("CPL") § 470.05(2), which has long been considered an "adequate and independent ground" that bars federal habeas review. *See Whitley v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011). New York's rule requires that an alleged error be "brought to the attention of the trial court at a time and in a way that [gives it] the opportunity to remedy the problem and thereby avert reversible error." *People v. Luperon*, 647 N.E.2d 1243, 1246-47 (N.Y. 1995). As the record supports that defense counsel did not raise this particular contention before the trial court, the Appellate Division properly applied New York's adequate and independent contemporaneous objection rule, and his unlawful arrest claim must be denied on that basis.

Moreover, claims that challenge verdicts as against the weight of the evidence are not cognizable on federal habeas review. *See McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011). "Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is an error of state law, for which habeas review is not available." *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). "A weight of the evidence argument is a pure

6

state law claim grounded in [CPL] § 470.15(5) which empowers New York state intermediate appellate court[s] to make weight of the evidence determinations." *Id.* (citation and internal quotation marks omitted). The Court therefore also denies Scott's weight of the evidence claim on that basis.

Scott's insufficiency of the evidence claim, although cognizable on federal habeas review, is also without merit. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that

a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

In support of his claim, Scott attacks the value of the evidence against him by considering each drug sale in a vacuum, without considering how the evidence proving one count was relevant to the proof on the other counts. He provides alternative interpretations of the evidence and challenges the trustworthiness of the identification evidence. However, this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal" and deferring to the jury's assessments of the particular weight to be accorded to the evidence and the credibility of witnesses). Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). The Appellate Division summarized the following evidence presented at trial:

> Robert Guiry, a detective with extensive experience with gang and narcotics investigations, testified that he listened to over 1,000 recordings of wire-tapped phone calls as part of the investigation into the narcotic distribution network headed by codefendant Hector Acevedo. Guiry testified that he was familiar with [Scott's] voice from observing

and listening to [Scott] during his booking and arraignment, as well as listening to his voice on a number of recorded phone calls to and from Acevedo and other members of the Bloods gang. The calls were played for the jury, and the jurors had the opportunity to hear [Scott's] voice on recordings that include multiple instances of [Scott] being identified by his first name. In a series of calls in April 2010, [Scott] was heard agreeing to sell cocaine to Acevedo and then proceeding to the place of sale on one occasion and agreeing to sell heroin to Acevedo's customer on another. The customer testified to the completed sale. Detectives also testified that they witnessed [Scott] engage in a hand-to-hand exchange on the street with a confidential informant (hereinafter the CI) in June 2010 after the CI called [Scott] to arrange a controlled purchase of heroin. Viewing the evidence in a neutral light, and deferring to the jury's credibility determinations, we are satisfied that the verdict is supported by the weight of the evidence.

*Scott*, 12 N.Y.S.3d at 337 (citations omitted).

Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Scott bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. For the reasons discussed by the Appellate Division, the record does not compel the conclusion that no rational trier of fact could have found proof that Scott was guilty of the crime of criminal sale of a controlled substance, especially considering the double deference owed under *Jackson* and the AEDPA. Scott therefore cannot prevail on his insufficiency of the evidence claim either.

## B.  Evidentiary Errors/Ineffective Assistance of Counsel (Grounds 2, 3, 4)

Scott next avers that the trial court committed three evidentiary errors[3] and that trial counsel was ineffective for failing to object to them. First, he contends that Investigator Guiry's testimony that 376 Madison Avenue was one of the locations from which Scott sold drugs deprived him of a

---

[3] The Court of Appeal also found these evidentiary error claims forfeited on direct appeal. The claims are therefore also procedurally barred from federal habeas review and subject to denial of that basis.

fair trial because the court should have instructed the jury about the limited purpose for which they could consider the evidence. The Appellate Division rejected this claim on direct appeal, stating that "the evidence that [Scott] engaged in drug sales was not introduced to suggest propensity, but was related to the conspiracy and enterprise corruption charges." *Scott*, 12 N.Y.S.3d at 337. The Appellate Division's determination that the evidence was fully admissible without further instruction as to the conspiracy and enterprise corruption charges presents solely an issue of state law, and this Court is bound by the Appellate Division's determination. *See Bradshaw*, 546 U.S. at 76**;** *Hicks v. Feiock*, 485 U.S. 624, 629-30 & n.3 (1988) (noting that a state appellate court's determination of state law is binding and must be given deference).

Moreover, even if the evidence was introduced solely to suggest Scott's propensity to sell narcotics, he still would not be entitled to federal habeas relief. The United States Supreme Court has specifically expressed "no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime." *Estelle*, 502 U.S. at 75 n.5; *see also Mercedes v. McGuire*, No. 08–CV–299, 2010 WL 1936227, at *8 (E.D.N.Y. May 12, 2010) (Appellate Division's rejection of petitioner's claim that the use of uncharged crimes violated his due process rights was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent because "the Supreme Court has never held that a criminal defendant's due process rights are violated by the introduction of prior bad acts or uncharged crimes"); *Allaway v. McGinnis*, 301 F. Supp. 2d 297, 300 (S.D.N.Y. 2004) (the Supreme Court has yet to clearly establish "when the admission of evidence of prior crimes under state evidentiary laws can constitute a federal due process violation"). Scott therefore cannot prevail on this claim in any event. Likewise, because he fails to show that the admission was error, he fails

to show that counsel was ineffective for failing to object to it. *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective assistance where counsel fails to raise meritless claims).

Relatedly, Scott claims in Ground 4 that the trial court deprived him of a fair trial by not providing a limiting instruction as to how the jurors should consider evidence regarding the Bloods gang. The Appellate Division similarly rejected this claim on direct appeal as "relevant to the criminal enterprise charge and admissible to prove necessary background information regarding the interaction of [Scott] and the alleged coconspirators." *Scott*, 12 N.Y.S.3d at 337. Again, the Appellate Division's determination that the evidence was fully admissible without further instruction as to the conspiracy and enterprise corruption charges presents solely an issue of state law, the determination of which is binding on this Court. *See Bradshaw*, 546 U.S. at 76; *Hicks*, 485 U.S. at 629-30 & n.3. The accompanying ineffective assistance claim therefore also must fail. *See Aparicio*, 269 F.3d at 99.

Scott additionally argues that the inclusion of his name in the call transcript headings deprived him of a fair trial because it impermissibly led the jury to conclude that he participated in the calls and drug sales conducted on April 13th and 20th. The Appellate Division reasonably rejected the claim because Scott "is identified by name multiple times in calls made to and from the number associated with his cell phone, and he was seen on video and clearly identified by detectives as the individual responding to the recorded phone call with the CI," and in light of the jury instruction that what they heard on the tapes controlled over what was written on the transcripts. *Scott*, 12 N.Y.S.3d at 337. Scott fails to show that, even assuming error, that it was so pervasive as to deny him a fundamentally fair trial. *See Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1995).

Likewise, the Appellate Division's determination that "defense counsel introduced the transcripts into evidence in an apparent, and successful, strategy to defeat the conspiracy and criminal enterprise charges," *Scott*, 12 N.Y.S.3d at 338, was both reasonable and supported by the record. Defense counsel argued during summation that the officers recorded "12 to 15 calls" and that only 20 of the transcript pages involved communications with Scott, while "[t]he other 210 pages" involved communications with other individuals. The jury acquitted Scott of the enterprise corruption charge, thus suggesting that it found the argument persuasive. Scott is therefore not entitled to relief on any argument advanced in support of these claims.

**D.     Freestanding Ineffective Assistance of Counsel Claims (Ground 5d)**

Scott next contends that trial counsel was ineffective in a variety of ways that are unrelated to his other claims. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Scott must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make

a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d

213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id.* at 125.

Scott's ineffective assistance claims must fail, however, even under the more favorable New York standard. Scott first contends that trial counsel was ineffective for failing to request a missing witness charge with respect to the CI. To warrant a missing witness charge under New York law, the requesting party must show that: 1) the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case; 2) the witness would naturally be expected to provide non-cumulative testimony favorable to the party who has not called him; and 3) the witness is available to such party. *People v. Gonzalez*, 502 N.E.2d 583, 586 (N.Y. 1986). Scott fails to demonstrate, however, that the CI, who did not make the controlled buy to satisfy a promise to cooperate with the prosecutor, "was in the People's control or that [the witness] would have provided material, noncumulative testimony." *People v. Smith*, 69 N.Y.S.3d 401, 406 (N.Y. App. Div. 2018).

Scott additionally argues that counsel should have objected on hearsay grounds to Plante's testimony that: 1) the CI knew Scott as "Black;" 2) the controlled buy order was changed from 10 to 7 bags; and 3) the CI gave him two phone numbers for Scott. The record reflects, however, that Plante's testimony that the CI knew Scott as "Black" was not admitted for its truth and was relatively innocuous, such that it did not prejudice Scott at trial. Moreover, the record reflects that counsel used the testimony about the order change and two phone numbers to argue that the

14

exchange did not occur as detectives maintained because Scott would have had to give the CI change and that Scott's use of multiple phones showed Scott was not a drug "king pin," and thus his decision not to object to the testimony constituted a tactical decision that this Court may not second-guess.

Similarly, the record supports that counsel made a strategic decision not to object to the admission of the call between Scott and the CI to discredit Detective Plante by suggesting that Plante exaggerated how much of the call between Scott and the CI he had actually heard.

Nor does Scott show that counsel was ineffective for not advancing arguments about an alleged gap in the chain of custody of the heroin underlying the June 10 drug sale and a hole in the "plastic agency bag" holding the evidence bag of heroin.[4] The testimony at trial and the "Item Chain of Custody" does not indicate a gap in custody. Similarly, the record reflects that the hole was in an exterior bag, and the bag that actually held the heroin remained intact.

---

[4] Scott raised these claims in a motion to vacate the judgment pursuant to § 440.10. The county court found that all claims were based on the record and therefore could have, but was not, raised on direct appeal. *See* N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,] [a ]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . ."). Federal courts in this Circuit have consistently held that where a state court concluded that a petitioner's claim raised in a CPL § 440.10 was procedurally barred by CPL § 440.10(2)(c), and the claim was indeed fully developed in the trial record, the petitioner has also defaulted that claim on federal habeas review. *See Sweet v. Bennett*, 353 F.3d 135, 139-41 (2d Cir. 2003); *McCall v. Rivera*, 965 F. Supp. 2d 311, 334-35 (S.D.N.Y. 2013); *Hogan v. West*, 448 F. Supp. 2d 496, 506-07 (W.D.N.Y. 2006). Because Scott has failed to assert cause for the default and prejudice, or that failure to consider the claim will result in miscarriage of justice, his claim is procedurally defaulted from review by this Court and subject to dismissal on that basis. *Sweet*, 353 F.3d at 141.

Finally, Scott claims that the cumulative effect of errors made by counsel amounted to ineffective assistance. But because the Court has rejected Scott's individual ineffective assistance claims as wholly without merit, considering them cumulatively does not alter the Court's analysis. *See, e.g.*, *Castro v. United States*, Nos. 10 Civ. 1680, 40 Cr. 664-2, 2013 WL 6508816, at *7 (S.D.N.Y. Dec. 11, 2010) ("Such [a cumulative error] argument fails because, for the reasons set forth above, the Court finds that none of [petitioner's] allegations satisfy the requirements of *Strickland* . . . ."). Scott is therefore not entitled to relief on any argument advanced in this ground.

### E. Harsh and Excessive Sentence (Ground 6)

Scott further contends that his sentence is harsh and excessive. It is well-settled, however, that an excessive sentence claim may not be raised as grounds for federal habeas corpus relief if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979) (setting mandatory sentences is solely the province of state legislature); *Hernandez v. Conway*, 485 F. Supp. 2d 266, 284 (W.D.N.Y. 2007) (excessive sentence claim does not present a federal question cognizable on habeas review where the sentence was within the range prescribed by state law). On direct appeal, Scott conceded that his "consecutive sentences were authorized and the sentences for each count are less than the maximum." *Scott*, 12 N.Y.S.3d at 338. Because the sentences imposed were within the statutory range prescribed by New York law, Scott cannot prevail on this claim.

### F. *Brady* Violation/Ineffective Assistance of Counsel (Grounds 7, 8, 10)

Finally, Scott claims that the prosecutor either failed to disclose *Brady* material or "buried" it among other disclosed material. Scott relatedly claims that, if the prosecution disclosed it, counsel

was ineffective for not using it at trial.[5] The evidence at issue was Investigator Guiry's testimony in the trial of two co-conspirators, held roughly nine months before Scott's trial, that Demetrius Day, and not Scott, had spoken with Lex Acevedo on April 13 about the drug sale that Lex and Scott had effected that day.

To establish a *Brady* violation, a petitioner must show that (1) the undisclosed evidence was favorable to him; (2) the evidence was in the state's possession and was suppressed, even if inadvertently; and (3) the defendant was prejudiced as a result of the failure to disclose." *Mack v. Conway*, 476 F. App'x 873, 876 (2d Cir. 2012) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). Respondent does not dispute that the first factor is met because Guiry's prior testimony constitutes impeachment material in that it differs from his testimony at Scott's trial.

Nonetheless, Scott is not entitled to relief on this claim because he fails to satisfy the second or third prong. First, Scott does not show that the evidence was suppressed. Rather, the record reflects that the prosecutor made the evidence available to defense counsel roughly a week before trial, and, when counsel did not pick up the material, the prosecutor gave them to counsel on the morning of jury selection. The prosecutor stated by affidavit in the state court that he did not separately identify Guiry's testimony as *Brady* material because he had not noticed that Guiry testified that Daye was the caller on the April 13 calls during the prior trial due to its "minimal importance."

---

[5] The ineffective assistance and underlying *Brady* claims were also raised to the state courts through Scott's § 440.10 motion to vacate the judgment and denied on procedural grounds. Consequently, these claims are also procedurally barred from federal habeas review as discussed in footnote 4, *supra*.

Secondly, Scott fails to show that he was prejudiced by either the prosecutor's or counsel's actions with respect to the Guiry prior testimony. Simply put, the record reflects that Guiry's prior testimony was error. The record reflects that investigators learned late in the investigation and grand jury proceedings that Scott, and not Daye, was the April 13 speaker. At the time of the co-conspirators' trial, the State had not yet corrected the call transcripts to reflect that Scott was the actual speaker. It appears that, while testifying at the co-conspirators' trial with the aid of call transcripts that still identified the speaker as Daye, Guiry mistakenly testified that the speaker in the April 13 call was Daye.

Moreover, even if counsel had used the prior testimony to impeach Guiry, it would not have changed the jury's conclusion that the speaker in the April 13 calls was Scott. The prosecution provided ample other evidence to support the jury's conclusion—the call came from a phone number that the CI had told investigators was Scott's and, in other calls involving that phone number, the other person referred to Scott by name or his nicknames numerous times, thus indicating that Scott was the subscriber of that phone number. The jury also heard numerous call recordings that allowed the jurors to become familiar with Scott's voice.

For the same reasons, Scott fails to show either that counsel was deficient in failing to impeach Guiry with the prior testimony, or that he was prejudiced by counsel's inaction. *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective assistance where counsel fails to raise meritless claims). Likewise, to the extent he re-raises his coram nobis claim that appellate counsel was ineffective for failing to raise the *Brady* issue on direct appeal, such claim is similarly meritless. *See Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000) (citation omitted) (petitioner entitled to relief on ineffective assistance of appellate counsel claim only "if he shows

that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker"). Accordingly, he is not entitled to relief on this ground in any event.

V. CONCLUSION

Scott is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: June 13, 2019.

                                          /s/ James K. Singleton, Jr.
                                          JAMES K. SINGLETON, JR.
                                          Senior United States District Judge